UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY WILKINS,

    Plaintiff,

v.                                        CASE NO. 08-CV-13979

COMMISSIONER OF                DISTRICT JUDGE AVERN COHN
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

**II.     REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Doc. 9, 12.)

Plaintiff was 48 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 14, 47.) Plaintiff's relevant employment history includes work as a general laborer in construction. (Tr. at 61.) Plaintiff last worked in 2002. (*Id.*)

Plaintiff filed the instant claim on August 26, 2003, alleging that he became unable to work on July 1, 2002. (Tr. at 47.) The claim was denied at the initial administrative stages. (Tr. at 35.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of back, discogenic and degenerative, as possible bases of disability. (*Id.*) The Commissioner found that the medical evidence was insufficient for diagnosis. (*Id.*)

On August 20, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the application for benefits *de novo*. (Tr. at 11-20.) In a decision dated September 13, 2007, the ALJ found that Plaintiff was not disabled from the alleged onset date through December 31, 2005, the date last insured, because he was able to perform a limited range of sedentary work. (Tr. at 19-20.) Plaintiff requested a review of this decision on October 2, 2007. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 29, 2008, when the Appeals Council

2

denied Plaintiff's request for review. (Tr. at 2-4.) On September 15, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse*

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

>Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment with Gerald Piesko, D.O., from

6

October 2004 through March 2005. (Tr. at 101-09.) In October 2004, Dr. Piesko ordered a lumbar MRI, which indicated "[d]isc extrusion in the right paracentral and subarticular region at L3-L4 level causing the right lateral recess narrowing with mass effect on the right L4 nerve root" and "[c]ircumferential disc bulges with superimposed central disc protrusions at L4-L5 and L2-L3 levels without any evidence for segmental spinal stenosis." (Tr. at 108.) A cervical spine MRI report indicated:

1. Spondylotic findings are noted with question of spinal cord myelopathy, the overall study is somewhat degraded secondary to post-operative findings involving the posterior elements with resultant artifact obscuring large sections of the spinal canal and its contents involving the mid cervical spine. If clinically indicated, post-myelographic CT scans may be helpful for further evaluation of the cervical spine.

2. Mild central stenosis at C6-C7, which is due to broad-based disc-osteophyte complex.

3. There are two small disc bulges of relatively diffuse nature involving the upper visualized dorsal spine, progress studies may be helpful more distally with respect to the spinal cord if clinically indicated.

(Tr. at 109.) In October 2005, Plaintiff sought treatment with Dr. Piesko because while "closing down his pool, [he] bent over with a pipe wrench and applied some torque [and] felt something pop in his back and now he has pain." (Tr. at 133.) Although Plaintiff requested an MRI, Dr. Piesko did "not think that a MRI based on my evaluation and based on what I see now will provide us with any new information." (*Id.*) Plaintiff confirmed this series of events at the administrative hearing. (Tr. at 167.) In addition, Plaintiff noted another recent time when he injured his back "lifting up a leaf blower." (Tr. at 162.) Plaintiff's counsel referred to another "reexacerbation of his back pain" in January 2005 when Plaintiff was shoveling snow from his driveway. (Tr. at 176.)

7

Plaintiff underwent physical therapy from November 2004 through January 2005, including therapeutic exercise, E-stim, traction, manual stretching and home exercise. (Tr. at 118-23.) Upon discharge, the therapist noted that "[p]atient was progressively getting better," "[h]ad a recheck with Dr. Piesko" who "wanted [plaintiff] to hold until further notice." (Tr. at 120.) Dr. Snyder took over for Dr. Piesko because of Dr. Piesko's failing health. (Tr. at 166.) Dr. Snyder completed a medical source statement on August 10, 2007, wherein he indicated that Plaintiff's limitations would disrupt his job schedule for 60 hours per month. (Tr. at 156.) Dr. Snyder also indicated that Plaintiff could sit for fewer than six hours in an eight-hour workday and that Plaintiff's ability to work hand controls was moderately limited and his ability to operate foot controls was severely limited. (Tr. at 156.)

A Physical RFC Assessment concluded that Plaintiff can occasionally lift up to 20 pounds, frequently lift up to ten pounds, stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and has the unlimited ability to push or pull. (Tr. at 125.) Plaintiff was also found to be frequently limited in all the postural abilities except the abilities to balance and kneel, which would be occasionally limited. (Tr. at 126.) There were no manipulative, visual, communicative or environmental limitations noted. (Tr. at 127-28.) The assessment also found Plaintiff only partially credible in his stated symptoms because, although Plaintiff stated he cannot put his shoes and socks on, cannot lift anything, and sometimes cannot walk, he also stated that he mows the lawn. (Tr. at 129.)

Plaintiff indicated in his activity report that he attends physical therapy three times a week, is able to bathe, care for his hair, shave, feed himself, and use the bathroom facilities, but that he needs help putting on shoes and socks. (Tr. at 74-75.) He is also able to take his medicine without reminders and mow his lawn, but needs help emptying the bagger. (Tr. at 76.) Plaintiff tries to

8

get out every day and is able to drive and ride in the car. (Tr. at 77.) Plaintiff does not shop or cook since his wife does those things for him but he does wash dishes and he takes out the trash. (Tr. at 76-77, 163.) Plaintiff pays bills and handles his own money matters without assistance. (Tr. at 77.) Plaintiff also enjoys reading, watching television, dining out, visiting relatives, watching movies, and being outside. (Tr. at 78, 89-91.)

Plaintiff testified at the administrative hearing that he can only stand, walk, or sit for thirty to forty-five minutes at a time (Tr. at 161), that he has difficulty using his hands to hold a pen due to a "degenerat[ion] from [his] neck injury when [he] was 22 years old, paralysis." (Tr. at 162.) He also stated he has difficulty bending and crouching because of pain. (Tr. at 162.) He also testified that he went to the emergency room about a month before the hearing because his "left arm was going numb," but "they couldn't diagnose anything." (Tr. at 165.) Plaintiff further stated that he lays on the floor with his feet up on an ottoman for "at least an hour a day." (Tr. at 170.)

The ALJ asked the vocational expert ("VE") to consider a hypothetical person with Plaintiff's background and

> who's limited to lifting, carrying, pushing and pulling no more than 10 pounds frequently, no more than 20 pounds occasionally, assume a person who can stand and walk up to six hours in an eight-hour work day, sit up to eight hours in an eight-hour work day, but assume that the person should be able to alternate sitting and standing when they want to, assume a person who should not climb ladders, ropes or scaffolds, can occasionally climb stairs, should not have to kneel, crouch or crawl and rarely stoop. Rarely is not never but it's less than a third of a work day. Assume a person who should not need to reach overhead. There should be no more than occasional flexing, extending or rotating the neck, the rest of the part of the day the person should be able to have their neck in a neutral position. The person should not be exposed to hazards or to vibration, should not have to operate foot or leg controls, should not have to drive as a work duty.

(Tr. at 172.) The VE testified that a number of unskilled light and sedentary jobs exist in the lower peninsula of Michigan for a person with the hypothetical abilities and limitations. When the ALJ asked the VE to assume a person who cannot lift, carry, push or pull more than five pounds

9

frequently or ten pounds occasionally, the VE responded that such a person could not perform the light work jobs but could perform the sedentary jobs, i.e., surveillance system monitor (300), assembler (6,500), and order clerk (1,400). (Tr. at 173.) The VE stated that a person could only miss work once a month and stay employed. (Tr. at 174.) The VE also noted that his testimony was consistent with information in the Dictionary of Occupational Titles ("DOT"). (Tr. at 174.)

### E.      ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since alleged onset date of July 1, 2002, through his date last insured of December 31, 2005. (Tr. at 16.) At step two, the ALJ found that Plaintiff's degenerative disc disease was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17.) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform his past relevant work as a construction laborer. (Tr. at 18.) At step five, the ALJ found that Plaintiff is a younger individual (age 44-49) and is able to perform a limited range of sedentary work. (Tr. at 18-19.) Thus, the ALJ found that Plaintiff was not disabled. (Tr. at 20.)

### F.      Analysis and Conclusions

### 1.      Legal Standards

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to undertake a limited range of sedentary work. (Tr. at 19.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary

10

if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling ("SSR") 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251.

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the hypothetical presented to the ALJ did not accurately portray Plaintiff's limitations because, although it relied on the opinion of Plaintiff's treating physician, Dr. Kevin Snyder, the form was completed after Plaintiff's date last insured.[2]  (Doc. 9 at 10.)

---

[2] In order to be eligible for these benefits, a person must become disabled during the period in which he has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(d)(1)(A). The courts have therefore held that it is improper for an ALJ to concentrate his inquiry on a plaintiff's abilities and condition at some later date, such as the date of hearing, rather than during the time period when he met the special earnings requirements. *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). *See also Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). Therefore, such later evidence is not relevant.

Plaintiff also notes that the ALJ failed to mention Dr. Snyder's opinion that Plaintiff "would be disrupted from a regular job schedule with low physical demands approximately 60 hours per month." (Doc. 9 at 10; Tr. at 156.) Plaintiff argues that the ALJ should not have relied on Dr. Snyder's medical source statement and, on the other hand, that the ALJ neglected to rely on the portion of the statement that he finds helpful. I find this inconsistent argument unpersuasive. Plaintiff actually benefitted from the ALJ incorporating hand and leg control limitations into the hypothetical, which were uniquely stated in Dr. Snyder's August 10, 2007, medical source statement. (Tr. at 156.) As to the other statement in Dr. Snyder's medical source statement – that Plaintiff's limitations would disrupt his work for 60 hours per month – the Plaintiff himself correctly argued that the ALJ was not required to rely on the statement since it was made almost two years after the date last insured. I therefore suggest that these arguments do not present any error on the part of the ALJ that would undermine a finding of substantial evidence.

Plaintiff also argues that the ALJ failed to appreciate the "severity of the imaging studies performed on [Plaintiff's] low back and neck." (Doc. 9 at 10-11.) Plaintiff indicates that an MRI of the cervical spine dated October 12, 2004, showed "degenerative disc disease with stenosis," "with question of spinal cord myelopathy." (Doc. 9 at 11; Tr. at 109.) In addition, Plaintiff points to an MRI dated October 24, 2004, which shows an "annular tear with protrusion at L2-3," a "small disc protrusion at L5-S1" and "central to right paracentral protrusion causing deformity of the thecal sac and also bilateral neural foraminal lateral recess narrowing at L4-5, which are changes that can cause nerve root irritation or compression and lead to low back pain and lower extremity symptoms." (Doc. 9 at 11; Tr. at 108.) Finally, Plaintiff notes that he suffered a decrease in range of motion from November 30, 2004, to March 2005. (Doc. 9 at 11; Tr. at 118, 121-22.)

I suggest that the ALJ's opinion did consider the MRI evidence and even specifically mentioned that "MRI scans showed degenerative disc disease along the spine, mostly in the cervical and lumbar areas." (Tr. at 16.) I further suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians as well as the daily activities described by Plaintiff himself that he is able to take care of his grooming needs, mows the lawn, drives, gets out every day, washes dishes, pays bills, handles his own money matters, watches television, dines out, visits relatives, watches movies, closes down his own pool, lifts and uses leaf blowers, and shovels snow. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

I further suggest that the hypothetical accurately incorporated medically-supported abilities and limitations and that the ALJ gave sufficient reasons for discounting Plaintiff's credibility. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and there either must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).

If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's

symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.* When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at \*\*3 (6th Cir. Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under these standards, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier*

*Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                  s/ *Charles E Binder*
                                                                  CHARLES E. BINDER
Dated: May 4, 2009                           United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  May 4, 2009                           By     s/Patricia T. Morris
                                                                  Law Clerk to Magistrate Judge Binder